# 𝔐𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## Jones et als. v. Bond's Adm'r et als.

### April 25th, 1889.

Absent, Richardson, J.

1. Equitable jurisdiction—*Incomplete sale—Sureties—Case at bar.*—B. agreed to convey to H. and N. certain land, they to give for half the price three bonds, with sureties. J. and three others promised to become the sureties, provided vendees secured them by a trust deed. The bonds were executed and left with a third party until the conveyance and trust deed were given. B. gave possession to vendees but no conveyance, and they gave no trust deed. The bonds remained with third party. H. acquired the rights of his co-vendee, and died indebted. B. filed a bill against N. and J. and his associates, calling on the latter to answer whether the bonds had been delivered, and on N. whether he was willing to complete the purchase, and if not, then B. asked for a rescission. Defendants answered, denying the delivery, and took depositions sustaining the denial. B. filed amended bill, alleging that the allegations in the original bill were mistaken. He then brought an action at law on the bonds, which was enjoined. Held: B. could not maintain the action at law, and much less both that action and the suit in equity.

2. Idem—*Agreement—Estoppel—Case at Bar.*—By representing to defendants that he would endeavor to have the contract rescinded, B. obtained from defendants an agreement that they would not take advantage of any allegation that the bonds were not delivered, when the bill had, without their knowledge, been already filed. Held: Defendants were not estopped by such agreement.

Appeal from two decrees of circuit court of Orange county, rendered February 4, 1882, and May 4, 1885, respectively, in the chancery suit wherein John Bond was complainant, and

James L. Robinson, sheriff, and administrator of John Hansford, deceased, John W. Newman, P. B. Jones, John H. Lee, B. F. Nalle, R. M. Graves, and J. J. Halsey were defendants. Bond, Jones, Lee and Graves having died pending the suit, their representatives were substituted. The said decrees being adverse to the defendants, they obtained an appeal. Opinion states the case.

*A. R. Blakey* and *Wm. J. Robertson,* for the appellants.

*J. G. & W. W. Field,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

This cause comes up on an appeal from two decrees of the circuit court of Orange county, rendered, one on the 4th day of February, 1882, and the other on the 4th day of May, 1885.

It appears, by the record presented with appellants' petition, that, on the 1st day of January, 1861, John Bond entered into a written contract, under seal, with John Hansford and John W. Newman, by which Bond, in consideration of the covenants of the said Hansford and Newman, covenanted with them to sell and convey to them, by clear and unincumbered title, a tract of land of about 229 acres in Orange county, Va., and all the timber of white oak and pine on another and adjoining tract of 600 acres, which Bond had sold to one William Cave, but on which he had reserved from the sale said timber suitable for building purposes, and for cross-ties and bridge timber; also all the cross-ties then cut and lying in the woods on either of the said tracts; also a steam saw-mill then on the said 600 acre tract, with all the fixtures annexed to said mill, and all the privileges attached and reserved by the contract with Cave; and to make title to the said property; for which Bond covenanted to accept and receive from said Hansford and Newman one-fourth of the gross earnings of the said saw-mill, as fast as

they should be realized, until the sum of $3,000 (one-half of the entire purchase money for the aforesaid property) should be paid; and for the residue, $3,000, to take the bonds of said Hansford and Newman, with satisfactory security, for $1,000 each, payable to said Bond in three, four, and five years from January 1st, 1861, with interest from that date. Hansford and Newman applied to Richard M. Graves, John H. Lee, Benjamin F. Nalle, Philip B. Jones, and Joseph J. Halsey, citizens of Orange county of known responsibility, to become their sureties in the said three bonds of $1000 each, for the deferred instalments of the contract price as stipulated with Bond; and the said Graves, Lee, Nalle, Jones, and Halsey consented and agreed with Hansford and Newman to become their sureties in the said bonds, on the express condition that Hansford and Newman would fully secure and indemnify them by a deed of trust on the land and other property embraced in said contract with Bond, and to be conveyed to them by Bond. Said Joseph J. Halsey, a lawyer resident at Orange Court House, accordingly drew up the said contract of agreement with Hansford and Newman to become their sureties, on the condition aforesaid, and a deed of bargain and sale to be executed by Bond and his wife, conveying the said 229 acres of land, and the saw-mill, and timber, and other personalty to Hansford and Newman, in pursuance of their said contract with Bond; a deed of trust to be executed by said Hansford and his wife, and by said Newman and his wife, conveying the said 229 acres of land and the other property so to be conveyed by Bond and wife to said Hansford and Newman, in trust, to Lewis B. Williams as trustee, to indemnify and secure the said Graves, Lee, Nalle, Jones, and Halsey, as sureties on the said three bonds of Hansford & Newman to Bond for $1,000 each. Blank certificates of examination and acknowledgment in due form by the parties—husbands and wives—were appended to the drafts of the said deeds; and the three said bonds, for $1,000 each, payable to John Bond at three, four, and five years from Jan-

uary 1st, 1861, with interest, were also drawn at the same time—all the said papers as one simultaneous transaction of the date of January 1st, 1861.   The said three $1,000 bonds were signed and sealed by Hansford and Newman, and by Graves, Lee, Nalle, Jones, and Halsey as sureties; but they were not handed to Bond, nor to Hansford and Newman; but they and all of the said papers—the contract, the drafts of the deed and deed of trust, and the bonds—were left in the hands of Lewis B. Williams, as a mutual friend, until the said deed of bargain and sale from Bond and wife to Hansford and Newman, and the deed of trust from Hansford and Newman to Lewis B. Williams, trustee, to indemnify Graves, Lee, Nalle, Jones, and Halsey, should be executed by Bond and wife, and by Hansford and Newman and their wives, respectively.

Neither of the said deeds was ever executed by any party, and all the aforesaid papers remained in the hands of the said Lewis B. Williams, mutual friend; and Bond, without having made his deed of bargain and sale, and without receiving the said three $1,000 bonds, put Hansford and Newman in possession of the 229 acres of land, with the saw-mill and other property named in the contract with Hansford & Newman, and they proceeded to cut and sell the lumber, ties, &c., from the land, and paid to Bond $900 00, the one-fourth of the gross earnings.

Newman sold out his interest to Hansford, after which, in the spring of 1862, Hansford died, intestate and indebted. His estate was committed to James L. Robinson, sheriff of Orange county, for administration, who was proceeding to sell the saw-mill, lumber, ties, &c., as parts of Hansford's general assets to meet his general debts, when John Bond, apprehensive that Hansford had died insolvent, and that if the mill, lumber, ties, and other property were administered as general assets, he (Bond) would not realize from the estate more than forty per cent. of his claim against him, filed his original bill in the circuit court of Orange county, as sole complainant,

against Newman, Robinson, sheriff, administrator of Hansford, Graves, Lee, Nalle, Jones, and Halsey, as defendants.   In this bill (which was prepared and signed by Lewis B. Williams, as his attorney, the Lewis B. Williams, the depository of the papers, and mutual friend aforesaid,) Bond sets out the contract of January 1st, 1861.   He avers and exhibits with his bill the unexecuted drafts of the deed of bargain and sale, and of the deed of trust to indemnify the securities in the said three $1,000 bonds, which said bonds, he avers, were placed, together with the said unexecuted deeds and other papers, in the hands of *a third party* (Lewis B. Williams) until the parties and their respective wives should execute and deliver the said deeds.   Bond further sets out in this bill, that Hansford & Newman took possession of the property contracted to be sold and conveyed to them, and proceeded to cut and sell the timber, &c., and had paid to him $900 00 out of the proceeds; that Newman had sold out, and Hansford had died.

Bond avers and charges that the said securities allege that the said three $1,000 bonds were never delivered, and that it was distinctly agreed between them and Hansford & Newman, at the time of signing them, and as a condition of signing them, that they were not to be used until and unless the said deeds had been executed, acknowledged, and admitted to record. He charges, that Hansford & Newman had never complied with their contract, and that the sale by Robinson, sheriff, would injure him, Bond; and that Hansford's estate is insolvent. He avers, that he had never received the bonds, and that the party who holds them does not believe that he has any authority to surrender them, as there is a question whether or not they were ever delivered.   He says, that he is without remedy, save in equity, and he requires Graves, Lee, Nalle, Jones, and Halsey, the sureties in the said bonds, to answer on their several oaths as if specially charged, and they interrogated and be compelled to say "whether the bonds were delivered or not"; that defendant, Newman, answer and say whether or not

he is willing to comply with the contract, as surviving partner of Hansford & Newman, and if he be not willing, then that the court would rescind and set aside the contract of January 1st, 1861, and ascertain and decree due compensation to him, complainant Bond, for the use of the saw-mill and for the timber, ties, &c., sold from the land; and he prays, that the said Robinson, sheriff administrator, be enjoined from selling, or be required to sell, and the proceeds to be held subject to the order of the court, to which sale he, complainant, would consent. The contract of January 1, 1861, and the unexecuted deeds are filed as exhibits, and are made parts of complainants' bill and case. The bill was sworn to and the injunction was granted November 17th, 1862, and was perfected by an injunction bond. The authenticated record shows, that this original bill was filed on the 3rd day of November, 1862, and it was prepared and signed by Lewis B. Williams, who was the depositary of the papers, and the "third party" named in it, and it was sworn to by Bond.

Robinson, sheriff administrator, under a decree of the circuit court of Orange county of October 1, 1863, sold the saw-mill, lumber, cross-ties, &c., and returned a sale list, amounting to $3,017 92, and the sale notes therefor, with his report. There were no proceedings had beyond this until 1866, because, no doubt, of the prevalence of flagrant war; but on the 3d of May, 1866, the sureties, Lee, Jones, Nalle, and Halsey, filed their answers, on oath, fully responsive to the original bill, and fully and squarely denying that their said bonds were delivered, or to be delivered, until the deeds were executed, and averring that the said bonds, with the other papers, were put in the hands of Lewis B. Williams to await the full execution of the said deeds, all of which the said Bond well knew, and they pray that the said bonds may be given up, to be cancelled. Graves, the other surety, being dead, his executor was made a party, who answered to like effect.

On the 29th of August, 1866, Bond, by Lewis B. Williams,

his attorney, brought his action of debt, at common law, against Newman, Lee, Jones, Nalle, and Halsey, as survivors of themselves, and Hansford and Graves on the said three bonds, which suit at law still remains, and Bond still urged on his suit at law and his chancery suit. In October, 1867, the circuit court ordered Robinson to collect the sale notes and to deposit to the credit of the cause.

In 1868 John Bond filed his amended bill, stating his having filed his said original bill on November 3d, 1862, and charging that he had done so at the solicitations of the said securities and for their benefit. He charged, that he had sworn to the original bill in ignorance and by mistake, and that the said bill was wrong, and he asked that it be amended or corrected according to his said amended bill. This amended bill was answered by all the defendants, whose answers are responsive, and squarely deny the allegations.

J. W. Newman's deposition was taken by Bond, and his testimony sustains the original bill and the answers of the sureties to both the original bill and the amended bill. On the 28th of April, 1876, Graves' executor and other sureties filed their cross-bill, denying Bond's right to proceed at common law, when, by his bill, the chancery court had jurisdiction, and praying that he be enjoined from proceeding further with his common law suit, which injunction was granted 28th April, 1876, and bond given. Bond's executor demurred to this cross-bill, and, in vacation, February 4th, 1882, the judge of the circuit court of Orange county decreed that the complainant, Bond, might have his election between his suit at law and his suit in chancery, and that, if he should elect to prosecute his chancery suit, the injunction against his proceeding at common law should be perpetuated. After this, Bond's executor answered the cross-bill.

On the 5th of October, 1882, Bond's executor elected to proceed with his suit at law, on the terms of the vacation order, subject to such modifications as the court may make on hearing

of a petition of Bond's said executor.    Leave was given to file
petition for rehearing the vacation order, which petition was
filed in May, 1883, and answered by Jones' executor.    In May,
1884, the Court ordered sale of the land, by commissioners;
and on the 7th of May, 1885, the Court modified its vacation
order of 4th of February, 1882, now deciding that the jury,
under instructions from the court, shall judge of the weight of
evidence—of the bills and other papers to be read on the trial.
This vacation order of February 4th, 1882, and this decree of
the 7th of May, 1885, are the two decrees complained of by
this appeal.

The circuit court erred in both of the said decrees.    It
should have perpetuated the injunction, and have ordered that
the action of debt be dismissed, with costs against the plaintiffs.
John Bond had no contract with any one except Hansford and
Newman; and with them he covenanted to convey to them the
229 acre tract, and the timber, &c., with a clear and unincum-
bered title.    They contracted to pay him $6,000—one-half by
turning over to him one-fourth of the gross earnings of the
saw-mill, and for the other half ($3,000) they were to pay him
in money, in instalments of $1,000, in three, four, and five
years from January 1, 1861, for which they were to give to
him their bonds, with satisfactory security.    They succeeded
so far as to get the promise of Graves, Lee, Nalle, Jones, and
Halsey to become their securities upon their said bonds, but
only on the express condition that they, Hansford and New-
man, would fully secure and indemnify them by a deed of trust
on the 229 acre tract of land, saw-mill, timber, and other pro-
perty which said Bond was to convey to them.    Graves and the
other said securities showed their good faith by signing the
said three $1,000 bonds, but they never put them in the hands
of even Hansford and Newman, and they were never in Bond's
hands, nor was he ever entitled to claim them.    He had no
contract with Graves, Lee, Nalle, Jones, and Halsey, and they
never promised him that they would be securities; there was

no privity between him and them; and Hansford and Newman never contracted with him as to whom they would get to become securities. Graves, Lee, Nalle, Jones, and Halsey knew that Hansford and Newman could not comply with their engagement to them until Bond should comply with his contract to convey the 229 acre tract; and they had a deed of bargain and sale drafted for Bond and wife to execute, such as would give to Hansford and Newman a clear and unincumbered title to the property, which he was to convey by a deed of trust for their indemnity; and they had also drafted a deed of trust to be executed by Hansford and Newman, and their wives, conveying to Lewis B. Williams the property which Bond and wife should convey as they had covenanted to do. This deed of trust could not be executed until Bond and his wife should execute their deed of bargain and sale. The drafts for the said deeds and the three bonds were all deposited with Lewis B. Williams, as mutual friend, to await, first, the execution of Bond's deed, and next the execution of the deed of trust by Hansford and Newman, and the acknowledgment of both of them; when, and not till then, the deeds were to be delivered, and the bonds were to be handed over to Hansford and Newman, and, by them, to Bond. Bond wholly failed to execute the deed of bargain and sale, and the bonds were, for this reason, never delivered to either Hansford and Newman, or to Bond, who never acquired any right to them. He went outside of his contract with Hansford and Newman, and, of his own option and risk, he put them in possession of the land; retained the title in violation of his contract to convey; and he has no claim, in law, equity, or good morals, on Graves, Lee, Nalle, Jones, and Halsey. He called upon them, specifically and imperatively, to answer his bill, and to say on oath whether the bonds were ever delivered, and this they did. After eliciting their answer, he could not dismiss; the court had jurisdiction in chancery, and he could not resort to his suit at law; still less could he carry on a double-barrelled litigation, both in chancery

and at common law.    The bill and answers close the case. The answers are responsive and fully and positively deny the delivery of the bonds, and there is not a shadow or vestage of evidence to contradict the denial, and all the circumstances— the failure of Bond, the unexecuted deeds of bargain and sale and of trust, the explicit testimony of Newman, Bond's own witness, and the allegations of the original bill—all sustain the answers.    There is an attempt to parry the force and effect of the original bill; and it is claimed that the sureties are estopped from availing themselves of any allegations in the original bill as evidence, because four of them signed the paper dated the 17th of November, 1862.    Bond obtained that paper upon concealment and false pretense, on the 17th of November, 1862, not informing them that he had then, already, two weeks before, filed his bill and begun the procedure on his own account.    It was an evident effort to entrap them; but even if it be obligatory upon them, under the circumstances, it does not estop them from any defence which then existed; and the defence by the original bill did then exist, and had existed for two weeks; and they were, as the record shows, then full-handed with proof that the bonds had never been delivered, and that Bond had never fulfilled the terms and conditions which could give him any right to claim their delivery.    But Bond, by his amended bill, forced them to answer, under oath, specifically and pointedly, whether the bonds had ever been delivered, and this they did answer upon their own knowledge, *a priori*, and wholly without referring to or relying upon Bond's allegations in his original bill.    But the amended bill is wholly incredible and unsupported, and denied by the answers.

The cross-bill was unnecessary, but it does not alter the case.

There was no need or case for an issue out of chancery.    The bills called on the appellants for answers, on oath, on a specific question; the answers are responsive and conclusive, and all the evidence and all the circumstances corroborate and sustain the denial in the answers that the bonds were ever delivered.

The court should have so decreed, and have dismissed the complainant's bills against the appellants, and have ordered the bonds to be cancelled.

The decrees complained of must be reversed and annulled, and the cause will be remanded to the circuit court for further proceedings to determine the rights and equities between the parties to the contract between Bond and Hansford and Newman, and for the proper ascertainment and settlement of accounts before a master commissioner, and disposition of the proceeds of the sale of the property, which has been sold under the orders of the said circuit court.

Decrees reversed, with costs in favor of appellants.

DECREES REVERSED.